29 F.3d 627
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, Petitioner-Appellee,
v.
Rudell M. OPPEGARD, Respondent-Appellant.
 No. 93-3706.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: June 16, 1994.
Filed: July 6, 1994.
 
 Before BOWMAN, LOKEN, Circuit Judges, and STEVENS,* District Judge.
 PER CURIAM.
 
 
 1
 On October 15, 1991, Rudell M. Oppegard consented to entry of a Civil Money Penalty Order by the Board of Governors of the Federal Reserve System which required him to divest his ownership in Oppegard Agency, Inc., a registered bank holding company, and to entry of a Removal and Prohibition Order which required Oppegard to cease participating in the affairs of any banking institution. On November 23, 1992, on application of the Board, the district court[1] entered an order enforcing the Civil Money Penalty and the Removal and Prohibition orders. In March 1993, the Board moved for entry of a civil contempt order, alleging that Oppegard had failed to comply with critical provisions of the consent orders as enforced by the court. Oppegard now appeals the district court's order adjudging him in contempt. We affirm.
 
 
 2
 The crux of this appeal concerns 59,000 shares of Oppegard Agency stock issued to Oppegard when he recapitalized that company in June 1990. The Civil Money Penalty Order requires Oppegard to prepare a written plan of divestiture providing for "the cancellation" of these 59,000 shares, and for the "sale, disposal, or divestment ... of all other shares" of Oppegard Agency. Oppegard and the Board have never agreed on a divestiture plan. Oppegard contends that he is entitled to receive the fair market value of the 59,000 shares when he surrenders them to Oppegard Agency for cancellation. The Board contends, and the district court agreed, that the Civil Money Penalty Order plainly requires Oppegard to surrender the 59,000 shares for cancellation without consideration. The Board further notes that this interpretation of the consent decree is consistent with its enforcement position that the 59,000 shares were initially issued in 1990 without consideration and in violation of a prior cease and desist order.
 
 
 3
 On appeal, Oppegard points us to paragraph 2 of the Removal and Prohibition Order, which provides that "the Board of Governors hereby grants its approval ... of the transfer or attempted transfer by Oppegard of all or part of his shares in [Oppegard Agency] to ... (b) any other entity or person." As Oppegard construes it, this provision permits him to transfer the 59,000 shares to Oppegard Agency for value, or at a minimum creates an ambiguity in the "cancellation" term of the Civil Money Penalty Order that renders it not enforceable by contempt. We disagree.
 
 
 4
 Paragraph 2 of the Removal and Prohibition Order expressly states that any permitted transfers must comply with "an approved divestiture plan" under the Civil Money Penalty Order. To be approved, the divestiture plan must provide for the "cancellation" of the 59,000 shares and the "sale" of all other shares. We agree with the district court that these provisions plainly require that Oppegard surrender the 59,000 shares to Oppegard Agency for cancellation without consideration.
 
 
 5
 Oppegard further argues that the district court abused its discretion in entering a contempt order because the Board did not prove by clear and convincing evidence that he failed to comply with the earlier enforcement order. This contention is without merit. The record reflects an extended period of willful noncompliance with unambiguous mandates of the consent orders as enforced by the court. The terms of the district court's contempt order are reasonable, indeed, they are quite lenient given Oppegard's persistent refusal to satisfy his consent order commitments. Judicial tolerance is not infinite; it is time for strict compliance with the district court's decrees.
 
 
 6
 The order of the district court dated October 13, 1993, is affirmed.
 
 
 
 *
 The HONORABLE JOSEPH E. STEVENS, JR., Chief Judge of the United States District Court for the Western District of Missouri, sitting by designation
 
 
 [1]
 The HONORABLE DIANA E. MURPHY, Chief Judge of the United States District Court for the District of Minnesota